# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DIAMOND CONSORTIUM, INC.; DAVID BLANK | § § § | |
| v. | § § | Civil Action No. 4:17-CV-452<br>Judge Mazzant |
| MARK HAMMERVOLD; HAMMERVOLD PLC | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Sanctions Due to Fabrication of Evidence (Dkt. #208). Having considered the pleadings, the Court finds that the motion should be granted in part and denied in part. Plaintiffs shall not be permitted to allege at trial that any invoices, appraisals, point of sale, or repair receipts issued to customers before May 25, 2016 contained the written disclosure stating that the standards of diamond grading vary between laboratories.

## BACKGROUND

In this matter, Plaintiffs The Diamond Consortium, Inc. d/b/a The Diamond Doctor ("Diamond Doctor") and David Blank (collectively, "Plaintiffs") allege that Defendants Brian Manookian, Brian Cummings, Cummings Manookian, PLC (collectively, the "Manookian Defendants") and Mark Hammervold and Hammervold PLC (collectively, the "Hammervold Defendants") engaged in a scheme to defraud and extort Plaintiffs (Dkt. #131). Plaintiffs allege that the Manookian Defendants created websites and advertisements "falsely accusing The Diamond Doctor of having committed 'diamond fraud' and 'cheating' customers through the sale of 'overgraded' diamonds" (Dkt. #131 at ¶ 29). Plaintiffs allege that Manookian threatened Plaintiffs with several diamond over-grading lawsuits, unless Plaintiffs retained Cummings

Manookian as counsel and paid a $25,000 monthly retainer fee for a period of 120 months, totaling three million dollars (Dkt. #131 at ¶ 51). Plaintiffs allege that the Manookian Defendants' "campaign was and is completely false" and that "The Diamond Doctor and Blank do not commit 'fraud' or sell 'overgraded diamonds'" (Dkt. #131 at ¶ 33). Regarding their diamond grading, Plaintiffs allege that:

> The Diamond Doctor has had, and continues to maintain, a consistent policy of disclosing to its clients the potential for significant differences between grading and certifications from one laboratory to another. Simply put, The Diamond Doctor makes its clients aware that a certification from one lab may be perceived as being more reliable than a certification from another. These disclosures include the potential for higher appraised values for diamonds with particular certifications and the resulting retail pricing disparities.

(Dkt. #131 at ¶ 23). In the pending Motion for Sanctions Due to Fabrication of Evidence, the Manookian Defendants allege that the Diamond Doctor did not in fact disclose to its clients the potential for differences between grading certifications (Dkt. #208). The Manookian Defendants issued Plaintiffs a request for production of documents providing any information to customers about diamond grading. The Manookian Defendants allege that Plaintiffs produced fabricated sales receipts and appraisals containing a diamond grading disclosure that was not included on original sales receipts and appraisals (Dkt. #208). Defendants allege that Plaintiffs created "evidence beneficial to them in hopes of escaping a finding of fraud, which would undo all of its allegations that Defendants' advertisements are false." (Dkt. #208 at p. 12).

In response, Plaintiffs state that Diamond Doctor "does not maintain, and has never maintained, physical or electronic copies of invoices or appraisals." (Dkt. #236 at ¶ 1). Plaintiffs state that Diamond Doctor retains electronic records of all data pertaining to inventory and each customer transaction on Excel databases in its inventory management and point of sale system, Jewels2000 by LogicMate ("LogicMate") (Dkt. #236 at ¶ 1). According to Plaintiffs, "[w]hen an

invoice or appraisal is queried in LogicMate, the system retrieves relevant data points from the Excel databases and prints them on a template that exists in LogicMate (Dkt. #236 at ¶ 3). Invoice-related data points are printed on an invoice template and appraisal related data points are printed on an appraisal template (collectively, "Templates") (Dkt. #236 at ¶ 3).

Plaintiff state that the Templates "are hard-coded into LogicMate and contain static information that does not regularly change from sale to sale (things like the Diamond Doctor logo, website . . . and legal disclaimers)" (Dkt. #236 at ¶ 3). Plaintiffs state "[b]y nature of the LogicMate internal structure and functioning, Diamond Doctor has no ability to print a queried invoice or appraisal on the old Template in effect at the time of the original transaction" (Dkt. #236 at ¶ 5). "As a result, the newly-generated document will not be an exact duplicate of the original if any changes to the Template have been made since the time of the original document" (Dkt. #236 at ¶ 5).

On May 18, 2016, Defendants requested copies of any invoices or appraisals Diamond Doctor provided to any customers purchasing EGL-graded diamonds from 2010 through the present (Dkt. #236 at ¶ 6). On May 25, 2016, Diamond Doctor's custodian of records, Nicole Becker ("Becker"), updated Diamond Doctor's invoice, appraisal, point of sale, and repair Templates to include a written disclosure regarding diamond grading standards (Dkt. #236 at ¶ 9). The disclosure states:

> "A diamond certificate, also called a diamond grading report is a report created by an independent laboratory stating the quality of a diamond according to their grading standards. The standards of grading vary between laboratories." (the "Grading Disclosure").

(Dkt. #236 at ¶ 9); (Dkt. #236 at Exhibit 1A). Invoices and appraisals printed after May 25, 2016 include this Grading Disclosure (Dkt. #236 at ¶ 9). However, the Grading Disclosure would not have appeared on any invoices or appraisals for transactions occurring before May 25, 2016

(Dkt. #236 at ¶ 9). Counsel for Plaintiffs was unaware of this change to the Templates (Dkt. #236 at ¶ 9).

On December 7, 2016, Plaintiffs' counsel produced over 53,000 pages of documents to Defendants, including invoices and appraisals that were "all printed on the Templates in effect at the time they were printed rather than the Templates in effect at the time of the past transactions" (Dkt. #236 at ¶ 8). As a result, the produced documents contained the Grading Disclosure that was not present on invoices or appraisals for transactions occurring before May 25, 2016 (Dkt. #236 at ¶ 9). On April 20, 2017, Becker signed a Business Records Affidavit stating that the produced documents were true and correct copies of the sales receipts made by the Diamond Doctor (Dkt. #208, Exhibit 6). Becker stated that the only known differences between the produced documents and original sales receipts given to customers were the redacted customer names and contact information and lack of photographic images (Dkt. #208, Exhibit 6).

After receiving original sales receipts and appraisals from Diamond Doctor customers, Defendants noticed the discrepancy between the produced documents containing the Grading Disclosure and original sales receipts not containing the Grading Disclosure (Dkt. #208 at p. 7). On May 17, 2017, Counsel for the Manookian Defendants contacted counsel for Diamond Doctor explaining the discrepancies and their intent to file a motion for sanctions (Dkt. #236 at ¶ 14). On May 17 and 18, 2017, counsel for Diamond Doctor reviewed the produced documents and contacted counsel for the Manookian Defendants to explain the LogicMate system and why the produced documents contained the Grading Disclosure (Dkt. #236 at ¶ 15). Counsel for Diamond Doctor offered to enter into any necessary stipulations to remedy the discrepancies (Dkt. #236 at ¶ 15).

On May 18, 2017, counsel for the Manookian Defendants filed the pending Motion for Sanctions Due to Fabrication of Evidence (Dkt. #208). That same day, the Hammervold Defendants filed a Motion Joining in Co-Defendants Motion for Sanctions due to Fabrication of Evidence (Dtk. #209). On May 24, 2017, Becker testified during her deposition that when she signed the Business Records Affidavit in April 2017, she did not review the documents produced in December 2016 and was not aware that the produced documents contained the Grading Disclosure (Dkt. #208, Exhibit 2). Becker testified she did not add the Grading Disclosure for purposes of the lawsuit (Dkt. #208, Exhibit 2).

On June 8, 2017, Plaintiffs filed a response (Dkt. #236). On June 22, the Manookian Defendants filed a reply (Dkt. #256).

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. The Court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i). Rule 37 also permits the court to strike claims from the pleadings and even to "dismiss the action . . . or render a judgment by default against the disobedient party." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980); *accord* Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi). "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express*, 447 U.S. at 763–64.

Rule 37(b)(2) requires that any sanction be just and that the sanction relate to the particular claim that was the subject of the discovery violations. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004). The penalized party's discovery violation must be willful.

*United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). A severe sanction under Rule 37 is to be employed only where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.*

**ANALYSIS**

*Grading Disclosure*

Defendants first request that the Court prohibit Plaintiffs from alleging at trial that they adequately disclose grading differences. Plaintiffs have acknowledge that the Grading Disclosure was inadvertently included in the produced invoices and appraisals. Plaintiffs agreed to enter into any necessary stipulations to remedy the discrepancies (Dkt. #236 at ¶ 15). Plaintiffs shall not be permitted to allege at trial that any invoices, appraisals, point of sale, or repair receipts for transactions occurring before May 25, 2016 contained the Grading Disclosure.

*Spoliation Instruction*

"A spoliation instruction entitles the jury to draw an inference that a party who intentionally destroys important documents did so because the contents of those documents were unfavorable to that party." *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 207 (5th Cir. 2007). "A severe sanction such as . . . an adverse inference instruction requires bad faith and prejudice." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 642–43 (S.D. Tex. 2010) (citing *Condrey v. SunTrust Bank of Ga.,* 431 F.3d 191, 203 (5th Cir.2005); *Whitt v. Stephens County,* 529 F.3d 278, 284 (5th Cir.2008)). "Destruction or deletion of information subject to a preservation obligation is not sufficient for sanctions." *Id.* A court should not "draw an inference of bad faith when documents are destroyed under a routine policy." *Russell*, 234 F. App'x at 208.

The Manookian Defendants argue that the Court should instruct the jury that Plaintiffs destroyed evidence and that the jury can infer the evidence was prejudicial to Plaintiffs (Dkt. #208 at p. 21). Defendants note that Texas law requires Diamond Doctor to maintain receipts for no

less than four years (Dkt. #256 at p. 7) (citing Tex. Tax Code § 151.025(1) ("all sellers . . . shall keep . . . records of all gross receipts, including documentation in the form of receipts")). Defendants further state that even if Plaintiffs did not retain receipts and appraisals in the ordinary course of business, Plaintiffs failed to preserve and retain receipts after the initiation of the lawsuit (Dkt. #256 at p. 7).

Becker testified that "The Diamond Consortium, LLC does not maintain paper copies of the printed copies of sales receipts and appraisals given to customers in its regular course of business, but instead maintains the data as electronically stored information in industry/retail-specific computer programs." (Dkt. #236, Exhibit 1B). Although Plaintiffs should have maintained this information, a court should not "draw an inference of bad faith when documents are destroyed under a routine policy." *Russell*, 234 F. App'x at 208. Here, there is no evidence that Diamond Doctor destroyed documents—it failed to maintain them in its regular course of business. Although Plaintiffs were subject to a preservation obligation after the commencement of this matter, failing to comply with this obligation is not sufficient for sanctions. The Court will permit examination of witnesses during trial on this issue.

Defendants further argue that they will suffer prejudice because Plaintiffs have not produced original records or testimony regarding the grading disclosures Diamond Doctor made to its customers (Dkt. #256 at p. 10). However, the Court has already held that it will not permit Plaintiffs to allege at trial that appraisals, invoices, point of sale, and repair receipts issued before May 25, 2016 contained the Grading Disclosure. Further, on June 27, 2017, the Court allowed the Manookian Defendants to issue forty subpoenas to Diamond Doctor's customers to obtain information regarding Diamond Doctor's grading disclosures. Defendants' request for a spoliation instruction is therefore denied.

*Attorneys' Fees*

Defendant's request for any attorneys' fees incurred in connection with the pending motion is denied at this time.

## CONCLUSION

Defendants' Motion for Sanctions Due to Fabrication of Evidence (Dkt. #208) is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiffs shall stipulate that the Grading Disclosure did not appear on any invoices, appraisals, point of sale, and repair receipts for transactions occurring before May 25, 2016.

**SIGNED this 29th day of June, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE