IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE DIAMOND CONSORTIUM, INC. D/B/A THE DIAMOND DOCTOR | § § § | |
| *Plaintiffs,* | § § | |
| vs. | § § | Civil Action No. 4:17-CV-00452 |
| MARK HAMMERVOLD and HAMMERVOLD PLC. | § § § § § | |
| *Defendants.* | § | |

## MOTION TO PROCEED *PRO SE*

Mark Hammervold and Hammervold PLC ("Hammervold") file this Motion to Proceed *Pro Se* so that Mark Hammervold may exercise his right to plead and conduct his own defense per § 28 U.S.C. 1654.

1. Undersigned Counsel previously moved to withdraw from representing Mark Hammervold and Hammervold PLC to effectuate Mark Hammervold's election to take over his own own defense and to appear on behalf of his solo law practice on May 12, 2017 (Dkt. 196).

2. This Court held a hearing on that Motion on May 19, 2017. The Court thereafter entered an Order (Dkt. 224) denying the Motion to Withdraw. The Order denying the Motion to Withdraw expressed the following concerns about Hammervold taking over his own representation, specifically that "Hammervold and Hammervold PLC's aligning interests in the case would lead to hybrid representation."[1]

---

[1] Dkt. 224, p. 5.

3. On June 27, 2017, the Court granted Hammervold's Motion to Sever and Consolidated Motion to stay in Civil Action No. 4:16-CV-00094, *Diamond Consortium Inc., et al. v. Brian Manookian, et al.* ("Underlying Litigation"). Hammervold appealed the Court's denial of its Motion to Dismiss and Motion to Substitute as counsel. During the pendency of those appeals, the parties to the Underlying Litigation conducted additional discovery, proceeded to trial, and reached an eventual settlement.

4. The underlying case involved competing claims by the Plaintiff and by Manookian regarding a series of communications between Plaintiff and Manookian in the Fall of 2015. The Plaintiff alleged that Manookian "extorted" them by threatening and enacting an aggressive client solicitation campaign, which Manookian alleged communicated would only cease if Plaintiff "retained" Manookian. Manookian alleged that the Plaintiffs responded to Manookian's client solicitation campaign by orchestrating a scheme to make it falsely appear he was extorting them, in order to "conflict" him out of continuing to solicit and/or to represent claimants against Plaintiff.

5. Hammervold was a secondary defendant in the case between Plaintiff and Manookian, added only during Plaintiffs' Second Amended Complaint. The Plaintiffs' operative Complaint sparsely mentions Hammervold. Hammervold's only allegedly wrongful conduct was his "willingness" to accept representation of claimants adverse to Plaintiffs from Manookian, which Plaintiffs claimed somehow enabled Manookian's "extortion scheme."

6. During the May 19, 2017 hearing on this case, this Court observed that it has "never seen a case like this," and although this Court typically has the ability to "figure out who is the bad actor…[it] probably won't know until we have a trial." Dkt. 263, 37:8-20.

7. The Plaintiff and Manookian confidentially settled their competing claims on the eve of trial. The terms were not disclosed, but they included this Court entering an Agreed Injunction (Dkt 360). This Court's Agreed Injunction provided as follows in pertinent part:

> Effective immediately, the Parties, their officers, directors, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, are hereby enjoined from any harassing conduct or disparaging or defaming the services, business, integrity, veracity or personal or professional reputations of the other in either a personal or professional manger at any time and through any medium or intermediary. Dkt. 360.

8. In the course of the interlocutory appeal that continued between Plaintiff and Hammervold, Plaintiff's Counsel admitted that the settlement called for the Plaintiffs to make a circuitous payment to Manookian that was structured as Plaintiff's Counsel purchasing internet sites from Manookian:

| | |
|---|---|
| Judge Clement: | What's the status of your case against Mr. Manookian? |
| Howard Klatsky: | Your Honor, there was a compromise, a confidential settlement agreement entered into that resulted in the entry of a, an agreed permanent injunction. So the claims against Mr. Manookian and his firm have been resolved. |
| Judge Clement: | So, does the confidentiality prevent you from saying whether money was paid? |
| Howard Klatsky: | Um, whether money was paid? As part of the settlement? Your Honor, I believe that it does. If you were to order me to answer your question, I would, would certainly, uh, do so. |
| Judge Clement: | Okay. <u>Was the money paid?</u> |
| Howard Klatsky: | As I understand things ... I'm not trying to be cute. The answer is yes and no. <u>Technically no</u>, under the terms of the agreement. <u>However, my recollection of things</u>, and I was one of a handful of lawyers involved, <u>is that one of the law firms who was representing my client agreed to purchase certain internet sites that Mr. Manookian had allegedly posted.</u> |
| Judge Clement: | Like the Facebook ads and all that? |

| | | |
|---|---|---|
| Howard Klatsky: | Yes, Your Honor. <u>And that was the way it was ultimately resolved</u>, to the best of my understanding.[2] | |

9. Counsel for Hammervold has filed a Motion to Withdraw concomitant with the filing of this Motion. The Motion to Withdraw seeks relief unrelated to that sought within the instant motion.

10. The circumstances and record, along with the materials that accompany this Motion, demonstrate that this Court should now exercise its discretion to permit Hammervold to represent himself and his solo law practice.

### **Lack of Prejudice to the Plaintiff**

11. The Plaintiffs previously opposed Hammervold's request to represent himself because they had "good faith concerns" that if Hammervold gained access to AEO materials, those materials would be shared with Manookian, who they claimed was continuing to harass Plaintiffs, including by posting Plaintiffs' proprietary information to a website, ddvictimfund.com, and would use any such materials to further harass the Plaintiffs. This is not reason to prevent Hammervold from taking over this defense for several reasons.

12. First, if Hammervold is allowed to take over his own defense, he will not become automatically entitled to receive access to any materials that Defendants' previously designated as Attorneys-Eyes-Only. Hammervold will have to petition the Court for access to any materials to which Hammervold has previously been denied access. This Court has significant discretion under Rule 26 to limit, condition and/or deny any such requests. *Levine*, 226 Ct. Cl. 701, 702, 1981 U.S. Ct. Cl. LEXIS 106, *2 (Ct. Cl. Feb. 24, 1981) demonstrates how a trial court can effectively manage any concerns about a *pro se* litigant's access to AEO documents, using far less restrictive

---

[2] This is an unofficial transcript of an audio excerpt from the Fifth Circuit's official audio recording of the oral argument that took place before the Fifth Circuit on February 7, 2018.

means than terminating the litigant's self-representation. In *Levine*, a patent holder sued a competitor for patent infringement. *Id.* at *2. After the patent holder failed to convince the court to remove an AEO designation on the competitor's proprietary information, the patent holder dismissed his attorneys, and sought to proceed *pro se*. *Id.* at *3. The trial judge "allowed [him] to proceed pro se" and then separately addressed whether the patent holder should be permitted access to the AEO materials. *Id.* The court ultimately denied the patent holder access to the proprietary information – even though he was entitled to represent himself – because the defendants made a sufficient evidentiary showing that the patent holder indicated that he might "use the information to manufacture competing products." *Id.* Hammervold's need to represent himself is far greater and important to his defense than any to access information or documents that have been designated attorneys' eyes only.

13. Second, any concern by the Plaintiffs in this regard is cumulatively addressed by this Court's August 16, 2017 Order (Dkt. 360), which broadly enjoined Manookian from any disparagement, defamation, or harassment of the Plaintiffs.

14. Finally, the Plaintiffs are now judicially estopped from arguing that Hammervold should be denied his right to self-representation based on potential bad acts or bad character of Manookian.

15. Judicial estoppel is an equitable doctrine that should be invoked by courts "to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Love v. Tyson Foods, Inc.,* 677 F.3d 258, 261 (5th Cir. 2012). The aim of the doctrine is to "protect the integrity of the judicial process." *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). In determining whether to apply judicial estoppel, this Court has previously stated that it looks for the presence of

the following criteria: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love,* 677 F.3d at 261 (*quoting Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011)). "Because the doctrine of judicial estoppel is intended to protect the judicial system, rather than the litigants, detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Id.* (quoting *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-08 (5th Cir. 1999)). Where a party enters has into a consent judgment, it becomes bound, and is estopped, as to the specific matters adjudged therein, even in a different proceeding. *United States v. International Bldg. Co.*, 345 U.S. 502, 504-506 (1953).

16. The Plaintiffs requested and received entry of the Agreed Permanent Injunction (Dkt. 360). The Agreed Permanent Injunction explicitly enjoined the Plaintiffs and their Attorneys from "any…disparaging or defaming the services business, integrity, veracity, or personal or professional reputations of [Brian Manookian, Cummings Manookian PLC, and Brian Cummings] in either a personal or professional manner at any time and through any medium or intermediary." The Plaintiffs and their Attorneys "forever waive[d] and relinquish[ed] any all rights to challenge th[e] Agreed Permanent Injunction."

17. Because the Plaintiffs availed themselves of, and received, a judgment from this Court expressly precluding them from any disparagement of Brian Manookian, Cummings Manookian PLC, and Brian Cummings, "through any medium," the doctrine of judicial estoppel precludes them from reversing course and arguing that Hammervold should not be able to represent himself due to Manookian's alleged bad acts or character and Hammervold's "association" with Manookian.

### Hybrid Representation

18. This Court's previous order also denied Hammervold his right to represent himself because this Court was concerned that Hammervold representing himself would "lead to hybrid representation." Dkt. 224, p. 5. On appeal, the Fifth Circuit did not endorse this as a reason for denying Hammervold the right to represent himself:

> The district court also discussed that Hammervold's pro se representation would lead to prohibited "hybrid representation." The court refrains from adopting the district court's determination that Hammervold PLC is legally indistinguishable from Hammervold as an individual defendant. Instead, the court reiterates the long-accepted principle that a corporation is separate from its shareholders, even where the corporation has a sole shareholder.

*Diamond Consortium, Inc. v. Hammervold*, 2018 U.S. App. LEXIS 16212, *6 (Jun. 14, 2018).

### The Court of Appeals' Decision and the Trial Court's Continued Discretion

19. Although the Fifth Circuit affirmed this Court's previous exercise of discretion to deny the Motion to Withdraw, this Court still retains the discretion to permit Hammervold to take over his own defense.

20. The Fifth Circuit interpreted this Court's previous order as making a finding that Hammervold had engaged in "obstructionist misconduct," which is a recognized exception to the right to self-representation. *Diamond Consortium, Inc. v. Hammervold*, 2018 U.S. App. LEXIS 16212, *6 (Jun. 14, 2018). While undersigned believes that the Fifth Circuit misinterpreted and/or overstated this Court's findings in this regard (the undersigned did not understand this Court to have made any finding that Hammervold engaged in "obstructionist misconduct"), this Court nevertheless retains discretion to permit Hammervold to represent himself now.

21. A trial judge has the discretion to terminate a party's self-representation when the party "engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834, n. 46; *see United States v. Long,* 597 F.3d 720, 726 (5th Cir. 2010); *see McKaskle v. Wiggins*, 465 U.S. 168,

177, n. 8 (1984) ("nothing in the nature of the *Faretta* right suggests that the usual deference to 'judgment calls' on these issues by the trial judge should not obtain here as elsewhere."). However, a trial court also has the discretion to permit a party to represent themselves when it later becomes satisfied that the party can do so without acting in an obstructionist manner. *See e.g. State v. Mizell,* 2008 Ohio App. LEXIS 4120, *14 (Sept. 26, 2008) ("In its discretion, the court may allow the defendant to return and resume his self-representation when it is satisfied that the defendant no longer poses a risk of future disruption.").

22. Counsel conferred with Howard Klatsky, counsel for Plaintiffs, regarding this motion. Mr. Klatsky opposes this motion.

WHEREFORE PREMISES CONSIDERED, Hammervold respectfully requests that this Court enter an order allowing Hammervold to represent himself and Hammervold PLC.

Dated: August 8, 2018

Respectfully submitted,

*/s/ Varant Yegparian*
Varant Yegparian
Texas Bar No. 24070893
S.D. Tex. ID No. 2385654
SCHIFFER HICKS JOHNSON PLLC
700 Louisiana, Ste. 2650
Houston, Texas 77002
Tel. 713.357.5150
Fax. 713.357.5160
vyegparian@shjlawfirm.com

Page | 9

## **CERTIFICATE OF CONFERENCE**

I certify that I conferred with Howard Klatsky, counsel for Plaintiffs, regarding the relief sought in this motion. Mr. Klatsky stated that the motion is opposed.

*/s/ Varant Yegparian*
Varant Yegparian

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 8, 2018, a true and correct copy of the foregoing filing was served upon all counsel of record via the Court's ECF system.

*/s/ Varant Yegparian*
Varant Yegparian