the evidence this disclosure of the confidential material to the news media occurred in

January 2016. Thus, the Court finds these releases to three different news outlets in

January 2016 constitute three separate violations of the Court's *Order* of November 6,

2015, which was in effect at this time.

### 4.   Willful Violation

The final issue the Court must determine is whether Mr. Manookian and Mr.

Hammervold knowingly, willfully, and intentionally violated the Court's *Order* of

November 6, 2015. Once again, the Court relies upon the framework established by the

Tennessee Supreme Court in *Chattanooga-Hamilton Cty. Hosp. Auth.*:

> The fourth issue focuses on the willfulness of the person alleged to have
> violated the order. The word 'willfully' has been characterized as a word of
> many meanings whose construction depends on the context in which it
> appears. Most obviously, it differentiates between deliberate and
> unintended conduct. However, in criminal law, 'willfully' connotes a
> culpable state of mind. In the criminal context, a willful act is one
> undertaken for a bad purpose.
>
> In the context of a civil contempt proceeding under Tenn. Code Ann. § 29–
> 2–102(3), acting willfully does not require the same standard of culpability
> that is required in the criminal context. Rather, willful conduct consists of
> acts or failures to act that are intentional or voluntary rather than
> accidental or inadvertent. Conduct is 'willful' if it is the product of free will
> rather than coercion. Thus, a person acts 'willfully' if he or she is a free
> agent, knows what he or she is doing, and intends to do what he or she is
> doing.
>
> *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209
> S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty
> may constitute willfulness for the purpose of a civil contempt proceeding.
> Determining whether the violation of a court order was willful is a factual
> issue that is uniquely within the province of the finder-of-fact who will be
> able to view the witnesses and assess their credibility. Thus, findings
> regarding 'willfulness' should be reviewed in accordance with the Tenn. R.
> App. P. 13(d) standards.

*Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 356-57 (citations and footnotes
omitted).

First, as to Mr. Manookian, the Court finds Mr. Manookian knowingly, willfully, and intentionally used the confidential material and deposition testimonies of Dean Chase and Sandra Chase in his representation of Mr. King in the unrelated case of *King v. Chase*. Mr. Manookian was a free agent, knew the Court entered the *Agreed Protective Order* on October 30, 2015 with modifications, and subsequently entered its written *Order* of November 6, 2015, which was in effect at this time, but chose to use the confidential material in his Davidson County lawsuit. The confidential material was used as a bargaining chip with opposing counsel on at least two separate occasions and some of the confidential information was even filed with the Davidson County Chancery Court. Additionally, Mr. Manookian even disclosed the confidential text messages to his own client, Mr. King, to provide more support in the *King v. Chase* lawsuit. Thus, the Court finds Mr. Manookian knowingly, willfully, and intentionally violated the *Order* of November 6, 2015 on four separate occasions as it relates to the *King v. Chase* case.

Second, the Court finds Mr. Manookian knowingly, willfully, and intentionally violated the Court's *Orders* when he released the confidential materials to News Channel 4 WSMV, NewsChannel 5 WTVF, and the *Nashville Scene* in January 2016. The Court finds Mr. Manookian was not coerced to release this information and did so freely for his and his client's personal gain. As Mr. Manookian admitted, he did provide the news media with the confidential material, yet he submits to this Court it was performed in the time period of October 4-6, 2015. The Court has already found Mr. Manookian's testimony was not credible, and this also leads the Court to find he

knowingly, willfully, and intentionally released the confidential material to the news media after the Court's Order of November 6, 2015.

Moreover, the Court finds Mr. Manookian's time period for his disclosure to be illogical, because if such were the case, why would Mr. Manookian fail to inform the Court it was he that gave the evidence to the news media prior to the Court's entering an *Order*, to which no violation would have occurred? The Court infers Mr. Manookian's silence to be deafening as to this point. Furthermore, Mr. Manookian claimed to have evidence of this apparent submission to Phil Williams, but at the hearing, failed to present the exonerating evidence. After searching the record for any evidence to corroborate Mr. Manookian's time period, the Court finds no such evidence exists.

Additionally, Mr. Manookian would have the Court believe three separate news outlets would receive information for a news story, which involved very recognizable individuals in the Nashville community in October 2015, and fail to investigate the contents of the story, and fail to run the story until February 2016. The Court finds sometimes the most likely stories are the most simple, which is Mr. Manookian released the documents **after** the Court's *Orders* in late October 2015 and early November 2016. Thus, the Court finds Mr. Manookian knowingly, willfully, and intentionally violated the *Order* of November 6, 2015, which was in effect at the time, on three separate occasions as it relates to the disclosures to the media.

Next, as to Mr. Hammervold, the Court finds Mr. Hammervold knowingly, willfully, and intentionally used and released the confidential material in his representation of Mr. King in *King v. Chase*. Mr. Hammervold was co-counsel with Mr. Manookian and, as such, is responsible for the filings submitted by the parties. Thus, he knowingly, willfully,

Page **93** of **122**

and intentionally violated the Court's *Orders* by permitting the filing of *Plaintiff's Response to Defendant's Motion for Protective Order* in the *King v. Chase* case, with the attached confidential material as Exhibit 1. (*See* Tr. Exhibit 17, Sept. 23, 2016.) Thus, Mr. Hammervold was a free agent, knew what he was doing when he filed the Exhibit with the Court and intended to do so, and freely used the confidential material in the *King v. Chase* case. Thus, Mr. Hammervold knowingly, willfully, and intentionally violated the Court's *Order* of November 6, 2015, which was in effect at the time, on one occasion by his use and release of the confidential information in the *King v. Chase* case. Additionally, the Court finds Mr. Hammervold may have also knowingly, willfully, and intentionally disclosed the confidential text messages to Mr. King, while acting as co-counsel with Mr. Manookian. However, the record lacks sufficient evidence to meet the threshold for a contempt violation. Thus, the Court finds Mr. Hammervold willfully violated the *Order* of November 6, 2015, which was in effect at the time, on one occasion as it relates to his involvement in the *King v. Chase* case.

As to the news media disclosure violations by Mr. Manookian, the Court finds Mr. Hammervold did not knowingly, willfully, and intentionally violate the Court's *Orders* in this regard. However, most of the evidence shows Mr. Hammervold's willful blindness to the matter, and failure to alert the Court to Mr. Manookian's disobedience to the Court's *Order*, but the Court does not find this to be a violation of the Court's *Order* of November 6, 2015.

Therefore, in total, the Court finds Mr. Manookian in civil contempt for knowingly, willfully, and intentionally violating the Court's *Order* of November 6, 2015 on seven separate incidents when he used, released, and filed the confidential material during his

representation of Mr. King in the *King v. Chase* case and when he knowingly, willfully, and intentionally released the confidential materials to the news media. Additionally, the Court finds Respondent, Cummings Manookian, PLC is also in civil contempt based upon the knowing, willful, and intentional violations of Mr. Manookian acting as its agent for the law firm. As to Mr. Hammervold, the Court finds Mr. Hammervold in civil contempt for knowingly, willfully, and intentionally violating the Court's *Order* of November 6, 2015 on one incident when he used, released, and filed the confidential material during his representation of Mr. King in the *King v. Chase* case. Furthermore, Respondent, Hammervold Law, PLC is also in civil contempt based upon the knowing, willful, and intentional violation of Mr. Hammervold's acting as its agent for the law firm.

### B. Tennessee Rules of Civil Procedure Sanctions

While the Court finds Mr. Manookian and Mr. Hammervold in civil contempt for their violations of the Court's *Orders*, the Court also finds alternative grounds for sanctions based upon Mr. Manookian's and Mr. Hammervold's abuse of the discovery process in this case. As such, the Non-Parties also move the Court to issue Rule 37.02 sanctions against Mr. Manookian and Mr. Hammervold for their failure to adhere to the *Agreed Protective Order* and Court's *Orders*, relating to the discovery in this matter. Rule 37.02 of the Tennessee Rules of Civil Procedure provides as follow:

> If a deponent; party; an officer, director, or managing agent of a party; or, a person designated under Rule 30.02(6) or 31.01 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Rule 37.01 or Rule 35, or if a party fails to obey an order entered under Rule 26.06, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

**(A)** An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

**(B)** An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

**(C)** An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

**(D)** In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

**(E)** Where a party has failed to comply with an order under Rule 35.01 requiring the party to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this rule, unless the party failing to comply shows that he or she is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Tenn. R. Civ. P. 37.02

Additionally, in *Alexander v. Jackson Radiology Assocs., P.A.*, the Tennessee

Court of Appeals explained the power trial courts have to remedy abuses of discovery:

The provisions of Rule 37.02 primarily apply to sanctions for non-compliance with a court order. *Lyle v. Exxon,* 746 S.W.2d at 698–99. However, as this Court previously has observed, the rules governing discovery would be ineffectual absent the trial court's authority to sanction their abuse. *Mansfield v. Mansfield,* No. 01A019412CH00587, 1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995)*(no perm. app. filed )*(citing 8A Charles A. Wright, et al. *Federal Practice and Procedure* § 2281 (2d ed.1994)). Thus, although the Rules do not explicitly provide for sanctions for discovery abuse absent a court order, trial courts possess the inherent authority to take actions to prevent abuse of the discovery process. *Mercer,* 134 S.W.3d 121, 133. Further, wide discretion is afforded to the

trial courts to determine the appropriate sanction. *Id.* Although "reasonable judicial minds can differ concerning [its] soundness," the trial court's determination of the appropriate sanction will be set aside only where the court "has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *Id.* (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999)).

*Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 15 (Tenn. Ct. App. 2004).

Furthermore, in *Mansfield v. Mansfield*, the Tennessee Court of Appeals also explained:

[T]he Tennessee Rules of Civil Procedure authorize serious sanctions against persons who seek to evade or thwart full and candid discovery, including being found in contempt, having designated facts be taken as established, striking pleadings, dismissing an action or claim or granting a judgment by default, or assessing expenses and attorneys' fees.[1] These sanctions serve a three-fold purpose: (1) to secure a party's compliance with the discovery rules, (2) to deter other litigants from violating the discovery rules, and (3) to punish parties who violate the discovery rules. *Electronic Data Sys. Corp. v. Tyson*, 862 S.W.2d 728, 735 (Tex.Ct.App.1993). Monetary sanctions serve the additional purpose of providing compensation for the expenses caused by the inappropriate conduct. *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1453 (11th Cir.1985).

*Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329, at *5 (Tenn. Ct. App. Nov. 3, 1995) (footnotes omitted).

As stated in *Pegues v. Illinois Cent. R. Co.*, 288 S.W.3d 350, 354 (Tenn. Ct. App. 2008) *perm. app. denied* (Tenn. Jan. 20, 2009) (quoting *Alexander v. Jackson Radiology Assoc., P.A.*, 1567 S.W.3d 11, 14 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. Nov. 15, 2004)):

[T]he inherent powers of the court to impose sanctions are most effective when utilized with discretion and restraint . . . "[T]he punishment must fit the offense" . . . "[T]he power to sanction should be used sparingly.  It should not be used like a sword and used frequently . . . to do so would diminish the significance when sanctions are imposed."

Thus, sanctions are a drastic measure which the Court wisely imposes with discretion. The Court finds Mr. Manookian and Mr. Hammervold abused the discovery process in this case and sanctions are appropriate. First, Mr. Manookian entered into the *Agreed Protective Order* on August 28, 2015, in order to receive sensitive materials and for permission to depose Dean Chase and Sandra Chase. However, upon receipt of the confidential material and the taking of the depositions, Mr. Manookian failed to follow the *Agreed Protective Order* and disseminated the confidential material to third parties and news outlets. For example, while Mr. Manookian claims he released the confidential materials and deposition testimonies to the news outlets in early October 2015, which the Court has already found to be untrue and the documents were released in January 2016, even if such were the case, Mr. Manookian would still be abusing the discovery process by completely ignoring the terms of the *Agreed Protective Order* to which Mr. Manookian claimed to be bound. This in itself is an abuse of the discovery process, and performed by an Officer of the Court nonetheless.

As explained above in the civil contempt section of this *Memorandum and Order*, the Court finds Mr. Manookian is in civil contempt for seven counts for his willful disobedience of the Court's *Order* of November 6, 2015. Thus, the Court finds sanctions are also appropriate for these seven offenses. In addition, as examined above, Mr. Manookian also admitted to releasing the confidential information to the following third parties: (1) General Funk, (2) David Raybin, (3) Kim Hodde, and (4) Eli Richardson.[56] These disclosures were in violation of the *Agreed Protective Order* prior to the Court entering an order on the matter, but are still actionable offenses for the abuse of the

---

[56] See numbered ¶ 69 above.

discovery process. Thus, the Court finds sanctions are appropriate for these four violations of the *Agreed Protective Order*.

As for Mr. Hammervold, the Court finds sanctions are also appropriate pursuant to Rule 37.02 of the Tennessee Rules of Civil Procedure. First, as explained above, Mr. Hammervold is in civil contempt for one count for violating of the Court's *Order* of November 6, 2015 as it relates to his representation of Mr. King in the *King v. Chase* case. Additionally, as to the dissemination of the confidential material to the news media, the Court finds, by a preponderance of the evidence, Mr. Hammervold had knowledge of and was complicit in concealing the improper disclosure to the Court. Furthermore, the Court finds Mr. Hammervold's actions in the discovery process and his failure to be truthful with this Court about his absence at the hearing on March 22, 2017 are both sanctionable offenses under Rule 37.02 of the Tennessee Rules of Civil Procedure.

## C. Damages

Based upon the Court's finding Mr. Manookian and Mr. Hammervold are in civil contempt of the Court's *Orders*, specifically the *Order* of November 6, 2015, and they have also exhibited sanctionable conduct throughout these proceedings, the Court must determine the legal basis for an award of damages in the context of civil contempt and Rule 37.02 sanctions.

"Punishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of his or her rights." *Reed v. Hamilton*, 39 S.W.3d 115, 118 (Tenn. Ct. App. 2000). An award of damages for civil contempt is remedial in nature. *Id.*;

*Wilson v. Wilson*, 984 S.W.2d 898, 904 (Tenn.1998) (Birch, J., dissenting). To the extent attorneys' fees are awarded as damages in a civil contempt action, an "appellate court will not interfere with the trial court's award of attorneys' fees except upon a showing that the trial court abused its discretion. " *Reed*, 39 S.W.3d at 119 (quoting *Kuyendall*, 1991 WL 10178 at *2).

As explained above, Rule 37.02 of the Tennessee Rules of Civil Procedure provides: "[i]n lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." Tenn. R. Civ. P. 37.02; *see Berg v. Berg*, No. M2013-00211-COA-R3CV, 2014 WL 2931954, at *14 (Tenn. Ct. App. June 25, 2014).

Here, the Court finds Mr. Manookian and Mr. Hammervold's failure to obey the Court's *Order* of November 6, 2015 to be without justification.

Thus, the Non-Parties submit their damages are in the form of attorneys' fees and expenses, which were incurred due to Mr. Manookian's and Mr. Hammervold's contempt and abuse of the discovery process. Accordingly, the Court finds it necessary to examine procedural history as is relates to the contempt and discovery dispute to fully examine the expenses and attorneys' fees requested.

At the outset of these contempt proceedings, the Court entered a *Scheduling Order* of August 12, 2016, which bifurcated this issue for the purposes of liability and damages on the Non-Parties' *Petitions*. (*See Scheduling Order* of August 12, 2016.) However, on November 9, 2017, the Court held the last day of the evidentiary hearing

on liability and the evidentiary hearing on damages on the same day. At this evidentiary hearing on November 9, 2017, the Non-Parties submitted their claim for damages in the form of attorneys' fees and expenses. Hence, the Non-Parties provided *Affidavits* of Charles Malone, Gayle Malone, John Day, and Marcus Crider in support of their damages. (Collective Tr. Exhibit 3, Nov. 9, 2017.) The *Affidavits of Charles Malone and Gayle Malone* of Butler Snow catalogue the attorneys' fees and expenses of Butler Snow that were incurred by the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., due to Mr. Manookian's and Mr. Hammervold's misconduct. (*Id.*) The *Affidavit of Marcus Crider* describes the attorneys' fees and expenses of Waller that were incurred by the Non-Parties as a result of the misconduct of Mr. Manookian and Mr. Hammervold. (*Id.*) Lastly, the *Affidavit of John Day* provides an expert opinion regarding the reasonableness and necessity of the attorneys' fees and expenses of Butler Snow that were incurred by the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. (*Id.*)

At the evidentiary hearing, Mr. Manookian and Mr. Hammervold failed to submit any evidence to contradict or dispute the damages evidence presented by the Non-Parties. Mr. Manookian and Mr. Hammervold instead chose to rely solely upon cross-examination of the Non-Parties' affiants. However, the Court finds Mr. Manookian and Mr. Hammervold failed to undermine the testimony provided by the Non-Parties' claims and evidence.

First, it appears Mr. Manookian and Mr. Hammervold contend the total attorneys' fees and expenses amount was excessive. However, the Court finds this argument to be unpersuasive. The Non-Parties were required to incur these additional costs due to

Mr. Manookian's and Mr. Hammervold's misconduct in both this case and the *King v. Chase* case. Regrettably, the Court finds the great majority, if not all, of these costs could have been avoided had Mr. Manookian and Mr. Hammervold simply done what is required as a bare minimum of any lawyer, and that is to simply tell the truth and not spend months on end perpetrating an active fraud against the Court, the attorneys, and the Parties. Mr. Manookian and Mr. Hammervold had plenty of opportunities to stop the fraud upon the Court and be candid and honest with the Court, but instead both attorneys made the conscious decision that attempting to conceal and to defraud the Court and then cover up their fraudulent conduct with more lies and deception as has been set out in this *Memorandum and Order*. Thus, the meter continued to run until Mr. Manookian admitted to releasing the confidential material at the hearing on November 9, 2017, as well as Mr. Hammervold admitting to knowing about Mr. Manookian's involvement of the disclosures to the news media. As a result, now the bill has come due.

Next, Mr. Manookian and Mr. Hammervold appeared to argue the attorneys' fees and expenses are not recoverable due to the fact they were paid by D.F. Chase, Inc. Such an argument fails as well. First, D.F. Chase, Inc. is one of the Non-Parties prosecuting the *Petitions* against Mr. Manookian and Mr. Hammervold. Second, Dean Chase, Sandra Chase, and D.F. Chase, Inc. all incurred, jointly and severally as to the legal liability for the attorneys' fees and expenses at issue. Further, Mr. Manookian and Mr. Hammervold essentially argued the release of the documents did not "cause" the damages sought by the Non-Parties, but as explained thoroughly in this *Memorandum and Order*, the Court finds Mr. Manookian's and Mr. Hammervold's contemptuous,

sanctionable, and obviously intentional conduct caused the Non-Parties to incur unnecessary fees and expenses. The entire basis for the proceedings that lead up to the final hearing on November 9, 2017 was to determine who released the confidential material in violation of the *Agreed Protective Order* and the Court's *Orders*. Now, after all of the consuming and tedious investigation and Court proceedings, Mr. Manookian, after being pressed during examination by Mr. Gayle Malone, finally admitted he was the one that released the information, and claims he and Mr. Hammervold did not cause the costs incurred to the Non-Parties. The Court finds such an assertion to be utterly false.

Finally, Mr. Manookian and Mr. Hammervold essentially submit the *King v. Chase* damages should not be included because they believe Mr. King could have filed the lawsuit irrespective of Mr. Manookian's and Mr. Hammervold's violations of this Court's *Orders*. First, this argument was not presented to the Court and there was no evidence provided to this Court besides the non-credible testimony of Mr. Manookian and Mr. Hammervold. Second, the Court finds this argument to also be unavailing. While Mr. King may have had other grounds to file his lawsuit, the evidence presented to this Court was that the release of the confidential material to Mr. King by Mr. Manookian and Mr. Hammervold propelled the lawsuit to be filed, even to go so as far as filing confidential material in the Davidson County Chancery Court in support of the *King v. Chase* lawsuit, all the while doing so in a knowing, willful, intentional and wrongful violation of this Court's *Orders*. (Tr. Exhibit 17, Sept. 23, 2016.) Thus, the Court finds the confidential information disclosure did cause Mr. King to file his complaint in the *King v. Chase* case. This argument fails.

Upon determining the implicit arguments by Mr. Manookian and Mr. Hammervold despite the fact the Court has given Mr. Manookian and Mr. Hammervold opportunity after opportunity to be heard and provide their evidence to this Court, Mr. Manookian and Mr. Hammervold failed to properly make said arguments or present evidence to this Court. Accordingly, the Court shall now determine the reasonableness of the attorneys' fees submitted by the Non-Parties and as to which fees were actually as a result of the Mr. Manookian's and Mr. Hammervold's contemptuous and sanctionable conduct.

The Tennessee Supreme Court Rule 8, Rule 1.5 of the Rules of Professional Conduct, provides the factors a Court must consider in determining reasonableness of an attorney fees and states:

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
>
> > (1) the time and labor required, the novelty and difficulty of   the questions involved, and the skill requisite to perform the legal service properly;
> >
> > (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> >
> > (3) the fee customarily charged in the locality for similar legal services;
> >
> > (4) the amount involved and the results obtained;
> >
> > (5) the time limitations imposed by the client or by the circumstances;
> >
> > (6) the nature and length of the professional relationship with the client;
> >
> > (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing . . . .

Tenn. R. S. Ct. Rule 8, RPC 1.5.

### 1. Butler Snow Attorneys' Fees and Expenses

The evidence presented to the Court shows Butler Snow's representation of the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., in this action and the attorneys' fees and expenses billed to the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., as a result of investigating and litigating the various matters surrounding the *Petition for Contempt* and *Motions for Sanctions* as well as the media matters that arose in this case. Accordingly, Butler Snow began representing the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., shortly after January 20, 2016, when it was learned certain media outlets had been provided and were intending to publish the confidential material disclosed by the Non-Parties. (Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone*, at numbered ¶ 3, Nov. 9, 2017.)

Consequently, after the publication of the Non-Parties' confidential material, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., filed their initial *Motion for Sanctions* on February 25, 2016. As it is, Butler Snow represented the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., regarding these matters through the final hearing on November 9, 2017. (*Id.* at numbered ¶ 4.)

First, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., seek their attorneys' fees and expenses incurred or will be paid to Butler Snow by the Non-

Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., in this action from January 20, 2016 through September 30, 2017. (Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone* and *Affidavit of Gayle I. Malone, Jr.*, Nov. 9, 2017.) In support, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., provide the sworn testimony of Charles Malone and Gayle Malone, as well as the monthly bills, documented on an entry-by-entry basis. (*Id.*) The Court also notes this final sum for attorneys' fees and expenses in this action has been discounted by $59,936.70 as a credit to the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., and a substantial sum has been redacted by Mr. Charles Malone and Mr. Gayle Malone for the legal services provided by Butler Snow. (Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone*, at numbered ¶ 16, Nov. 9, 2017.) For the reasons set forth below, the Court finds the attorneys' fees requests are reasonable.

Second, the time, labor, and skill required to perform these legal services reflect this are reasonable attorneys' fees.[57] The Court has reviewed the time entries contained in Butler Snow's monthly billing statements and has considered the reasonableness of the fees based upon the Court's knowledge of the nature of this matter, which includes the complexity, the time required to respond to various issues, the adversaries, and the novelty of the issues in dispute.[58] These attorneys' fees are proper.

Third, in light of the time involved in representing the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. and the likelihood the particular employment would

---

[57] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(1).
[58] *Id.*

preclude other employment by the attorneys on this case from Butler Snow heavily weighs in favor of the reasonableness of the fees.[59]

Fourth, the Court finds the fees charged by Butler Snow to be customarily charged in this locality.[60] It appears Gayle Malone, Jr. charges an hourly rate of $525.00; Charles Malone charges an hourly rate of $395.00; Beau Creson charges an hourly rate of $275.00; and Paige (Ayres) Nutini charges an hourly rate of $215.00. (Collective Tr. Exhibit 3, *Affidavit of Gayle I. Malone, Jr.*, at numbered ¶ 9, Nov. 9, 2017.) Based upon each attorney's level of experience, skill, and expertise in these matters, the Court finds the rates of the attorneys listed above are typically charged in Williamson County and the surrounding area for similar legal services rendered. (*Id.*)

Fifth, while this sum of the attorneys' fees and expenses are significant, the Court finds this amount involved is reasonable to uncover the contemptuous conduct and discovery abuses of Mr. Manookian and Mr. Hammervold and the result was favorable for the Non-Parties.[61]

Sixth, the Court also finds there were time limitations imposed by the circumstances for counsel of Butler Snow to respond to filings and attend unnecessary hearings in which Mr. Manookian and Mr. Hammervold failed to appear for one reason or another.[62]

---

[59] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(2).
[60] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(3).
[61] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(4).
[62] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(5).

Seventh, the Court was unable to find the nature and length of the professional relationship between the attorneys at Butler Snow and the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., for this factor's consideration.[63]

Eighth, the Court finds the Non-Parties' attorneys have excellent experience, reputation, and ability as attorneys to perform the legal services in this case.[64] (*Id.*)

Ninth, as described above, the Butler Snow attorneys charged hourly rates as follows: Gayle Malone, Jr. charged an hourly rate of $525.00; Charles Malone charged an hourly rate of $395.00; Beau Creson charged an hourly rate of $275.00; and Paige (Ayres) Nutini charged an hourly rate of $215.00.[65] This, too, appears to be reasonable.

Tenth, there is no evidence in the record of prior advertisements or statements by the attorneys as to their fees or whether the fee agreement is in writing.[66] Additionally, in considering the expert opinion of Mr. John Day, the Court concurs with Mr. Day's expert opinion regarding the reasonableness and necessity of the attorneys' fees and expenses of Butler Snow incurred by the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc. (*See generally* Collective Tr. Exhibit 3, *Affidavit of John Day*, Nov. 9, 2017).

Therefore, the Court finds the $297,870.64 in attorneys' fees and expenses that have been or will be paid to Butler Snow by the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., in this matter for the period of January 2016 through September 30, 2017 were incurred as a direct and proximate result of Mr. Manookian's and Mr. Hammervold's contemptuous conduct. (See Collective Tr. Exhibit 3, *Affidavit of*

---

[63] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(6).
[64] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(7).
[65] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(8).
[66] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(9) and (10).

*Charles I. Malone*, Exhibit B, Nov. 9, 2017.) Furthermore, in the alternative, the Court also awards these reasonable attorneys' fees based upon Mr. Manookian's and Mr. Hammervold's abuses of the discovery process throughout this case. These attorneys' fees and expense are reasonable in light of the circumstances of this case and are hereby awarded against Mr. Manookian, Mr. Hammervold, and their respective firms.

Next, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., also seek their attorneys' fees and expenses in this matter from October 1, 2017 through the conclusion of this case. (*See* Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone*, numbered ¶ 18, Nov. 9, 2017.) As such, the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc., request, as an award of damages, their attorneys' fees and expenses for Butler Snow they have not yet incurred, but reasonably estimate will incur in this matter as a result of the prosecution of the *Petitions*. The Non-Parties estimate $75,000.00 for future attorneys' fees and expenses.[67] (*Id.*)

Here, the Court denies the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc.'s, request as to award these fees at this time. The Court finds such an award would be premature and solely based upon projections. However, the Court shall grant the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc.'s, request for leave of Court to supplement their *Affidavits* with the fees and expenses incurred in this matter for this period of time.

Lastly, the next form of damages sought by the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc., as it relates to the Butler Snow representation, is the attorneys' fees and expenses incurred by the Non-Parties Dean Chase, Sandra Chase,

---

[67] This estimate is partly based upon the fact Butler Snow incurred over $90,000.000 in attorneys' fees and expenses in September of 2016, the month in which the first day of the evidentiary hearing was held on the Non-Parties' *Petitions* occurred.

and D.F. Chase, Inc. in *King v. Chase* and other threatened litigation by Mr. Manookian, Mr. Hammervold, and their firms. (*See* Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone*, Exhibit F, Nov. 9, 2017.)  These attorneys' fees and expenses are limited to the investigating and litigating the claims and threatened claims made by Mr. Manookian and Mr. Hammervold using the Non-Parties' confidential discovery materials, with such fees and expenses ending on September 29, 2016, the date the original claims brought by Mr. Manookian and Mr. Hammervold, on behalf of Mr. King, were dismissed. (*Id.*)

The Court finds the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. suffered $113,500.64 in damages in the form of attorneys' fees and expenses as a direct and proximate result of Mr. Manookian's and Mr. Hammervold's wrongful use and disclosure of the Non-Parties' confidential discovery materials in their representation of Mr. King in *King v. Chase* and other threatened litigation. Accordingly, these damages shall be awarded against Mr. Manookian, Mr. Hammervold, and their law firms based upon the finding of civil contempt against them. In the alternative, the Court also awards these damages pursuant to Rule 37.02 of the Tennessee Rules of Civil Procedure and the inherent power of the Court. The Court finds the $113,500.64 in attorneys' fees and expenses related to *King v. Chase* and the other threatened litigation are reasonable in amount based upon the time and labor required and difficulty and complexity of the numerous factual and legal issues involved, and the contentiousness of the case. The Court finds the accuracy of this figure is supported by the sworn testimony of Charles Malone and Gayle Malone, as well as the monthly bills, documented on an entry-by-entry basis, evidencing the fees and expenses charged by Butler Snow to the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. in the *King v. Chase* matter.

(*See* Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone*, Exhibit F, Nov. 9, 2017; Collective Tr. Exhibit 3, *Affidavit of Charles I. Malone*, at numbered ¶ 24, Nov. 9, 2017.) The Court also finds the factors analyzed above are applicable to those incurred in the *King v. Chase* action. Moreover, the Court finds the total attorneys' fees and expenses charged by Butler Snow in the *King v. Chase* matter and threatened litigation are reasonable and necessary based upon the time entries found in Butler Snow's monthly billing statements and considering the legal and factual questions at issue in *King v. Chase* and the threatened litigation, the complexity of each and the substantial investigation, motion practice, and hearing preparation required. Therefore, the Court finds the $113,500.64 in attorneys' fees and expenses that have been or will be paid to Butler Snow by the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. in the *King v. Chase* matter were incurred as a direct and proximate result of Mr. Manookian's and Mr. Hammervold's contemptuous and sanctionable conduct. Furthermore, these attorneys' fees and expense are reasonable in light of the circumstances of this case and are hereby awarded against Mr. Manookian, Mr. Hammervold, and their respective firms.

Ultimately, the Court awards $297,870.64 in reasonable attorneys' fees and expenses incurred by the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. in this matter for the period of January 2016 through September 30, 2017, awards $113,500.64 in reasonable attorneys' fees and expenses incurred by the Non-Parties Dean Chase, Sandra Chase, and D.F. Chase, Inc. in the *King v. Chase* matter, and grants the Non-Parties' Dean Chase, Sandra Chase, and D.F. Chase, Inc. request for leave of Court to supplement their *Affidavits* with the fees and expenses that were

incurred from the period of time from the preparation for the final hearing on November 9, 2017, which was not included in the *Affidavits*, to the entry of this *Memorandum and Order*. The total amount of attorneys' fees and expense of $411,371.28 are hereby awarded against Mr. Manookian, Mr. Hammervold, and their respective firms.

### 2. Waller Attorneys' Fees and Expenses

Next, the Non-Parties collectively also seek an award of damages damages in the form of attorneys' fees and expenses incurred from September 1, 2015 through October 18, 2017 by the Non-Parties due to Mr. Manookian's, Mr. Hammervold's, and their respective firms' contemptuous and sanctionable conduct and violations of the *Agreed Protective Order* and the Court's *Orders* regarding same.[68] The Court finds the accuracy of the this figure is supported by the sworn testimony of Marcus Crider of the relevant bills transmitted by Waller to the Non-Parties in this matter, as well as the monthly bills, documented on an entry-by-entry basis, for all of the relevant bills transmitted by Waller to the Non-Parties in this matter. (Collective Tr. Exhibit 3, *Affidavit of Marcus Crider*, Exhibit A, Nov. 9, 2017.)

The Court finds the attorneys' fees and expenses are reasonable. As explained by Mr. Crider in his *Affidavit*, Waller has been actively involved in the representation of the Non-Parties throughout the litigation since Mr. Manookian's July 20, 2015, and July 23, 2015 subpoenas to the Non-Parties. (Collective Tr. Exhibit 3, *Affidavit of Marcus Crider*, at ¶ 3, Nov. 9, 2017.) Specifically, Waller negotiated with Mr. Manookian and other defense counsel over the entry of the *Agreed Protective Order* prepared by Mr. Manookian; reviewed and produced numerous documents, correspondences,

---

[68] The Court notes total attorneys' fees are $177,660.00 and $13,664.84 in expenses. (Collective Tr. Exhibit 3, *Affidavit of Marcus Crider,* at numbered ¶ 12, Nov. 9, 2017.)

electronically-stored information and other discovery materials in accordance with the *Agreed Protective Order*; drafted pleadings relating to the entry of the *Agreed Protective Order*, the Court's subsequent oral and written orders regarding the same, and violations of said orders; and represented Dean Chase and Sandra Chase during the depositions. (Collective Tr. Exhibit 3, *Affidavit of Marcus Crider*, Exhibit A, Nov. 9, 2017.) Additionally, Waller prepared for and attended many hearings in these proceedings. Accordingly, with this background, the Court shall apply the factors set forth above. (*Id.*)

First, the Court finds the time, labor, and skill required to perform the legal services in this case were significant due to the complexity, the time required to respond to filings, and the adversaries in this matter.[69]

Second, in light of the time involved in representing the Non-Parties, the likelihood the particular employment would preclude other employment by the attorneys at Waller weighs in favor of the reasonableness of the fees.[70]

Third, the Court finds the fees charged by Waller to be customarily charged in this locality.[71] It appears Marcus Crider charged an hourly rate of $410.00 in 2015, an hourly rate of $425.00 in 2016, and a current hourly rate of $440.00. (Collective Tr. Exhibit 3, *Affidavit of Marcus Crider*, at numbered ¶ 2, Nov. 9, 2017.) Heath E. Edwards charged an hourly rate of $275.00 in 2015, an hourly rate of $305.00 in 2016, and a current hourly rate of $325.00. (*Id.* at numbered ¶ 5.) Chris Dunn charged an hourly rate of $400.00 in 2015, an hourly rate of $420 in 2016, and a current hourly rate of $430.00. (*Id.* at numbered ¶ 7.) Lastly, Shandra Wright, CEDS, and Michael Creath, CEDS,

---

[69] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(1).
[70] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(2).
[71] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(3).

although not attorneys but technical support each charged an hourly rate of $150.00. (*Id.* at numbered ¶ 8.) Based upon each attorney's level of experience, skill, and expertise in these matters, the Court finds the rates as typically charged in Williamson County and the surrounding area for similar legal services rendered.

Fourth, although these attorneys' fees and expenses are substantial, the Court finds this amount involved is reasonable to uncover the contemptuous conduct of Mr. Manookian and Mr. Hammervold and the result was favorable for the Non-Parties.[72]

Fifth, the Court also finds there were time limitations imposed by the circumstances for counsel of Waller to respond to pleadings and attend unnecessary hearings in which Mr. Manookian and Mr. Hammervold failed to appear for one reason or another.[73]

Sixth, the Court was unable to find the nature and length of the professional relationship between the attorneys at Waller and the Non-Parties for this factor's consideration.[74]

Seventh, the Court finds the Non-Parties' attorneys, Marcus Crider, Heath E. Edwards, and Chris Dunn, are in good standing with this Court and have superb experience, reputation, and ability as attorney to perform the legal services in this case.[75]

---

[72] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(4).
[73] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(5).
[74] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(6).
[75] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(7); *see* Collective Tr. Exhibit 3, *Affidavit of Marcus Crider,* at numbered ¶¶ 2-7, Nov. 9, 2017.

Eighth, as described above, the Waller attorneys charge reasonable rates compared to similar situated attorneys in Williamson County and the surrounding areas.[76]

Ninth, there is no evidence in the record of prior advertisements or statements by the attorneys as to their fees or whether the fee agreement is in writing.[77]

Therefore, the Court finds the $191,324.84 rendered for attorneys' fees and expenses incurred which have been or will be paid to Waller by the Non-Parties in this matter for legal representation from September 1, 2015 through October 8, 2017 due to Mr. Manookian's, Mr. Hammervold's, and their respective law firms' violations of the *Agreed Protective Order* and Court's *Orders* regarding the same are reasonable and necessary. Furthermore, these attorneys' fees and expense are reasonable in light of the circumstances of this case. Moreover, the attorneys from Waller are granted permission to supplement their requested attorneys' fees to reflect subsequent billable matters incurred from the period of time from the preparation for the final hearing on November 9, 2017, which was not included in Mr. Crider's *Affidavit*, to the entry of this *Memorandum and Order*. (*See* Collective Tr. Exhibit 3, *Affidavit of Marcus Crider*, at numbered ¶ 15, Nov. 9, 2017.)

Ultimately, these awards are based upon Mr. Manookian and Mr. Hammervold's civil contempt counts by violating the Court's *Orders*, specifically the *Order* of November 6, 2015 which was in effect at the time of the violations. Furthermore, in the alternative, these awards are also for sanctions against Mr. Manookian and Mr. Hammervold for

---

[76] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(8).
[77] Tenn. R. S. Ct. Rule 8, RPC 1.5(a)(9)&(10).

their abuse of the discovery process and failure to maintain candor with this Court throughout these proceedings.

## IV. CONCLUSION

For the above reasons, the Court finds Mr. Manookian in civil contempt for knowingly, willfully, and intentionally violating the Court's Order of November 6, 2015 on seven separate occasions.

The Court also finds Mr. Hammervold knowingly, willfully, and intentionally violated the Court's *Order* of November 6, 2015 on one occasion when he used, released, and filed a confidential document in his representation of Mr. King in *King v. Chase*.

The Court finds due to Mr. Manookian's abuse of the discovery process, failure to maintain candor with this Court, continuous violations of the *Agreed Protective Order*, and attempt to defraud this Court, sanctions are also appropriate for these offenses under Rule 37.02 of the Tennessee Rules of Civil Procedure.

The Court also finds Mr. Hammervold's abuse of the discovery process, failure to maintain candor with this Court, continuous violations of the *Agreed Protective Order*, and attempt to defraud this Court for over two years, sanctions are also appropriate for these offenses under Rule 37.02 of the Tennessee Rules of Civil Procedure.

Accordingly, the Court makes the following recapitulation of the total of the reasonable attorneys' fees and expenses awarded to the Non-Parties:

1. The Court awards the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc.'s, reasonable attorneys' fees and expenses incurred by the representation of the attorneys at Butler Snow for the period of January 2016

through September 30, 2017 in the amount of $297,870.64 against Mr. Manookian, Mr. Hammervold, and their respective firms;

2. The Court awards the Non-Parties, Dean Chase, Sandra Chase, and D.F. Chase, Inc.'s, their reasonable attorneys' fees and expenses incurred by the representation of the attorneys at Butler Snow for the period in the *King v. Chase* matter in the amount of $133,500.64 against Mr. Manookian, Mr. Hammervold, and their respective firms;

3. The Court awards the sum of $191,324.84 for attorneys' fees rendered and expenses incurred which have been or will be paid to Waller by the Non-Parties in this matter for legal representation from September 1, 2015 through October 8, 2017 against Mr. Manookian, Mr. Hammervold, and their respective firms;

4. The Court grants the Non-Parties' request for leave of this Court to supplement their *Affidavits* with the fees rendered and expenses incurred from the period of time from the preparation for the final hearing on November 9, 2017, which was not included in the *Affidavits*, to the entry of this *Memorandum and Order.* The Non-Parties' attorneys shall prepare, file, and serve an affidavit listing these remaining attorneys' fees and expenses incurred in litigating this matter while also applying the factors set forth in Rule 8, RPC 1.5 of the Tennessee Rules of the Supreme Court, to each fee not later than Friday, July 27, 2018. The Respondents shall prepare, file, and serve a response in opposition not later than the close of business on Friday, August 10, 2018. The Court shall decide the issue of the supplemental

attorneys' fees on the papers unless either party requests a hearing for good cause, in which event, the matter shall be set on the Court's regularly scheduled civil motion docket.

**THEREFORE**, the Court awards the total sum of **$622,696.12** as reflected above to the Non-Parties, CK Global, LLC; NV Music Row, LLC; Dean Chase, Sandra Chase, and D.F. Chase, Inc., to be paid by Respondents, Brian Manookian; Cummings Manookian, PLC; Mark Hammervold; and Hammervold Law, PLC, as a result of the findings herein.

This *Memorandum and Order*, together with an Order deciding Non-Parties' supplemental request for assessment of reasonable attorneys' fees and expenses shall constitute a Final Judgment within the meaning of Rule 54.01 of the Tennessee Rules of Civil Procedure from which the parties may appeal as a matter of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.

This Court shall refer to the Board of Professional Responsibility the conduct of Mr. Brian Manookian and Mr. Mark Hammervold.  This Court shall also refer to the District Attorney General's Office of the 21st Judicial District the conduct of Mr. Brian Manookian and Mr. Mark Hammervold.

**IT IS SO ORDERED.**

**ENTERED** this *20th* day of July, 2018.

Michael W. Binkley
**Circuit Court Judge/Chancellor, Division III**

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Memorandum and Order as entered by the Court has been forwarded postage prepaid, and/or emailed, and/or faxed, to:

Philip L. Robertson, Esq. (BPR No. 021668)
Brittany M. Bartkowiak, Esq. (BPR No. 031637)
Robertson Law Group
1896 General George Patton, Suite 600
Franklin, TN 37067
t. 615.656.1729
e. probertson@robertsonlg.com
e. brittany@robertsonlg.com
e. bspeight@robertsonlg.com
*Counsel for Plaintiff, David Chase*

Robert F. Parsley, Esq. (BPR No. 023819)
Michael J. Dumitru, Esq. (BPR No. 030140)
Miller & Martin
832 Georgia Avenue, Suite 1000
Chattanooga, TN 37402-2289
t. 423.756.6600
f. 423. 785.8480
e. bob.parsley@millermartin.com
e. michael.dumitru@millermartin.com
*Counsel for Defendant Andy Cho*

Brian Cummings, Esq. (BPR No. 019354)
Brian Manookian, Esq. (BPR No. 026455)
Cummings Manookian
45 Music Square West
Nashville, TN 37203
t. 615.266.3333
t. 615.266.0226
f. 615.266.0250
e. bmanookian@cummingsmanookian.com
e. brian.manookian@cmtriallawyers.com
e. bcummings@cummingsnaookian.com
*Counsel for Defendants Chris Stewart, Emily Stewart, Susan Martin, Clayton Mckenzie, Bryan Everett, and Lino Lovrenovic*

**[Clerk's Certificate of Service continued on next page]**

Rob McGuire, Esq. (BPR No. 021594)
Assistant United States Attorney
United States Attorney's Office
Middle District of Tennessee
110 Ninth Avenue South Ste A961
Nashville, TN 37203
*Former Counsel for Defendant Lauren Bull*

Mark Hammervold, Esq. (BPR No. 031147)
315 Deaderick Street Ste 1550
Nashville, TN  37238-3003
t. 615.928.2466
m. 615.509.0372
mark@hammervoldlaw.com
*Counsel for Bryan Everett, Susan Martin, Lino Lovrenovic & Clayton
   McKenzie*

Gayle I. Malone, Jr., Esq. (BPR No. 002388)
Charles I. Malone, Esq.  (BPR No. 022904)
Gibeault "Beau" C. Creson, Esq. (BPR No. 03049)
Butler Snow, LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
t. 615.651.6782
f. 615.651.6701
e. gayle.malone@butlersnow.com
e. charlie.malone@butlersnow.com
e. beau.creson@butlersnow.com
*Counsel for Intervenors D.F. Chase, Inc. Dean Chase, and Sandra Chase*

Marcus M. Crider, Esq. (BPR No. 018608)
Heath H. Edwards, Esq. (BPR No. 034076)
Frances Fenelon, Esq. (BPR No. 017315)
Christopher S. Dunn, Esq. (BPR No. 017067)
Waller
511 Union Street, Suite 2700
Nashville, TN 37219
t. 615.850.8067
f. 615.244.6804
e. marcus.crider@wallerlaw.com
e. heath.edwards@wallerlaw.com
e. chris.dunn@wallerlaw.com
e. frances.fenelon@waller.law.com
*Counsel for Intervenor Meredith Corp.*
                    **[Clerk's Certificate of Service continued on next page]**

Ronald G. Harris, Esq. (BPR No. 009054)
Neal & Harwell
1201 Demonbreaum Street Ste 1000
Nashville, TN  37203
t. 615.244.1713
f. 615.726.0573
e. rharris@nealharwell.com
*Counsel for Intervenor Scripps Media Inc.*

James D. Kay, Jr. (BPR No. 011556)
John B. Enkema, Esq. (BPR No. 016670)
Kay, Griffin, Enkema & Colbert PLLC
222 Second Ave. North Ste 340M
Nashville, TN 37201
t. 615.742.4800
f. 615.742.4801
e. john.enkema@kaygriffin.com
e. jim.kay@kaygriffin.com
*Counsel for Intervenor Glenn Funk*

David T. Hooper, Esq. (BPR No. 005413)
Hooper Zinn McNamee PLLC
109 Westpark Drive, Suite 300
Brentwood, TN 37027
t. 615.661.5472
f. 615.661.5473
e. dhooper@hooperzinn.com
*Counsel for Defendant Jason Ritzen*

John Phillip Williams, Esq. (BPR No. 000531)
Tune, Entrekin & White P.C.
315 Deaderick Street, Suite 1700
Nashville, TN 37238
t. 615.244.2770
f. 615.244.2778
e. jwilliams@tewlawfirm.com
*Attorney for the Nashville Scene*

**[Clerk's Certificate of Service continued on next page]**

Paul R. McAdoo, Esq. (BPR No. 034066)
Aaron & Sanders, PLLC
810 Dominican Drive Ste 208
Nashville, TN  37228-1906
t. 615.734.1188
f. 615.250.9807
e. paul@aaronsanderslaw.com
Attorneys for Meredith Corporation, owner
  and Operator of WSMV Channel 4 Nashville

This the _____ day of July, 2018.


_____
**Circuit Court Clerk**


[END OF DOCUMENT]

**Deborah Rubenstein - Court date offered**

| | |
|---|---|
| **From:** | Deborah Rubenstein |
| **To:** | Chase v. Stewart |
| **Date:** | 2/3/2017 11:28 AM |
| **Subject:** | Court date offered |
| **Bc:** | Mike Binkley;  Barton, Cathy;  Woodruff, Judge.Joseph;  Williams, Angie |

Counsel,

Judge Binkley would like to offer to you Thursday, March 2, 2017 for the continuation of the Chase v. Stewart matter, which was "bumped" on Wednesday, February 1, 2017, due to the first setting trial going forward.  The Chase case would be a first setting on March 2, 2017.

Please get together and see if this date is available for everyone and let me know.

Thank you.


Debbie Rubenstein, PLS
Judicial Legal Assistant
Circuit Court Judge Michael W. Binkley
State of Tennessee, 21st Judicial District
135 Fourth Avenue South, Ste 286
Franklin, TN  37064
Direct:  615.599.4014
Office:  615.425.4009
Fax:    615.790.5047
NALS Editorial Board 2014-2015/2015-2016

**LEGAL CONFIDENTIAL: The information in this email and in any attachments hereto may contain information which is privileged either legally or otherwise. It is intended only for the attention and use of the named recipient. If you are not the intended recipient, you are not authorized to retain, disclose, copy or distribute the message and/or any of its attachments. If you received this email in error, please notify me and delete this message.**

**EXHIBIT "A"**
**is an Exhibit referenced in footnote 40,**
**p. 35 of 123**



EXHIBIT

_A_